# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF NEW YORK

№ 14-cv-1798 (JFB)(ARL)

THE PLASTIC SURGERY GROUP, P.C.,

Plaintiff,

VERSUS

UNITED HEALTHCARE INSURANCE CO. OF NEW YORK, INC., ET AL.,

Defendants.

**MEMORANDUM AND ORDER**
December 11, 2014

JOSEPH F. BIANCO, District Judge:

Plaintiff, a medical practice specializing in plastic surgery, filed this lawsuit in state court, alleging that defendants ("United") breached a contract to pay health insurance benefits assigned to plaintiff by its patients. The benefits due for one patient, known as Jane Doe, form the primary dispute in this lawsuit. When Jane Doe was treated by plaintiff, she was insured by defendants through the "Group Life and Health Benefits Plan" ("the Plan") sponsored and administered by her employer, American Airlines.

United removed this action and now moves to dismiss it, while plaintiff moves to remand it. Although plaintiff styled its causes of action under New York law, the allegations in the complaint make clear that plaintiff asserts a *right* to be paid benefits under the Plan, which raises a colorable federal claim under the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1001 *et seq*. This case does not involve merely the *amount* of payment because the complaint and the Plan documents reveal that any shortfall in benefits is due to a dispute over the medical necessity of Jane Doe's treatment, which could only be resolved by interpreting the Plan. Furthermore, plaintiff has identified no independent legal obligation implicated by United's withholding of payments to plaintiff, which is essential to amount-of-payment claims. Therefore, plaintiff's claims are completely preempted by ERISA and plaintiff's motion to remand is denied.

Furthermore, for the reasons discussed herein, United's motion to dismiss is granted because no claim lies against United, who is not named as the plan administrator. ERISA Sections 502(a)(3) and 503 do not provide alternative avenues of relief against United, because § 502(a)(1)(B) would provide adequate relief to plaintiff if it sued the

proper party. Although the Court grants plaintiff's request to amend the complaint to include the proper party, all claims against United are dismissed.

## I. BACKGROUND

### A. Factual Background

The following facts are taken from the complaint. The Court assumes these facts to be true for the purpose of deciding these motions.

Plaintiff is a medical practice specializing in plastic surgery. (Compl. ¶ 1.) On April 15, 2011, and November 15, 2011, plaintiff provided services to Jane Doe, who received health care benefits coverage through United and assigned her benefits to plaintiff. (*Id*. at ¶¶ 1, 25-26) Plaintiff alleges that it received approval from United before it treated Jane Doe on both days, and that United paid plaintiff $27,747.00 for those services. (*Id.* ¶¶ 2, 4.)

Despite having paid plaintiff, United later determined that it overpaid for the services provided to Jane Doe, and demanded that plaintiff return most of the funds in July 2012. (*Id.* ¶¶ 32-33.) Plaintiff alleges that it appealed the repayment demand, and that United acknowledged it was an error. (*Id.* ¶¶ 34-37.) However, approximately one year later, in August 2013, United began withholding reimbursements due for plaintiff's treatment of other patients, who plaintiff refers to as Patients A, B, C, and D ("Patients A-D"). (*Id.* ¶¶ 6, 39.) According to plaintiff, United's sole reason for withholding these payments was its determination that it had overpaid for the services plaintiff provided to Jane Doe. (*Id.* ¶¶ 39-45.)

### B. The Plan

In 2011, when she received plaintiff's services, Jane Doe was enrolled in the "Group Life and Health Benefits Plan for Employees of Participating AMR Corporation Subsidiaries for employees of American Airlines" ("the Plan"). (Knoblach Decl. ¶ 3.) Relevant portions of the Plan are quoted and cited herein. In short, it entitled Jane Doe to coverage for "medically necessary" treatment, and authorized United to recoup overpayments by withholding future payments to Jane Doe or her provider.

### C. Procedural History

Plaintiff filed the complaint in this action on February 6, 2014, in the Supreme Court of the State of New York, County of Nassau. The complaint asserts four causes of action under New York law: the first for a declaratory judgment, the second for injunctive relief, the third for unjust enrichment, and the fourth for breach of contract. Defendants removed the entire action to this Court on March 19, 2014.

On May 16, 2014, defendants filed a motion to dismiss the complaint in its entirety, pursuant to Federal Rule of Civil Procedure 12(b)(6). On June 23, 2014, plaintiff opposed the motion to dismiss and filed a cross-motion to remand this action to state court. Defendants responded in opposition to the remand motion and replied in further support of their motion to dismiss on July 8, 2014, and plaintiff filed a reply in further support of its remand motion on July 17, 2014. The Court heard oral argument on July 29, 2014.

## II. PLAINTIFF'S MOTION TO REMAND

### A. Legal Standard

Generally, a case may be removed from state court to federal court "only if it could have originally been commenced in federal court on either the basis of federal question jurisdiction or diversity jurisdiction." *Citibank, N.A. v. Swiatkoski*, 395 F. Supp. 2d 5, 8 (E.D.N.Y. 2005) (citing 28 U.S.C. § 1441(a)); *see also* 28 U.S.C. § 1441. If a federal district court determines that it lacks subject matter jurisdiction over a case removed from state court, the case must be remanded. 28 U.S.C. § 1447(c). "When a party challenges the removal of an action from state court, the burden falls on the removing party 'to establish its right to a federal forum by competent proof.'"[1] *In re Methyl Tertiary Butyl Ether ("MTBE") Prods. Liab. Litig.*, No. 1:00-1898, MDL 1358 (SAS), M 21-88, 2006 WL 1004725, at *2 (S.D.N.Y. Apr. 17, 2006) (quoting *R.G. Barry Corp. v. Mushroom Makers, Inc.*, 612 F.2d 651, 655 (2d Cir. 1979)). Further, "[i]n light of the congressional intent to restrict federal court jurisdiction, as well as the importance of preserving the independence of state governments, federal courts construe the removal statute narrowly, resolving any doubts against removability." *Lupo v. Human Affairs Int'l, Inc.*, 28 F.3d 269, 274 (2d Cir. 1994) (citing *Shamrock Oil & Gas Corp. v. Sheets*, 313 U.S. 100, 108 (1941)); *accord Fed. Ins. Co. v. Tyco Int'l Ltd.*, 422 F. Supp. 2d 357, 367 (S.D.N.Y. 2006).

In short, United carries the burden to show that removal was proper because plaintiff's claims raise a federal question, which would provide subject-matter jurisdiction to this Court.

### B. ERISA Preemption

Defendant argues that removal was proper because ERISA completely preempts plaintiff's claims. Although "[f]ederal preemption is ordinarily a federal defense to the plaintiff's suit . . . . [which] does not appear on the face of a well-pleaded complaint, and, therefore, does not authorize removal to federal court," a corollary to this rule "is that Congress may so completely pre-empt a particular area that any civil complaint raising this select group of claims is necessarily federal in character." *Metro. Life Ins. Co. v. Taylor*, 481 U.S. 58, 63 (1987). In other words, if plaintiff's state-law claims are completely preempted, they are converted into federal claims for the purpose of the well-pleaded complaint rule. *Aetna Health Inc. v. Davila*, 542 U.S. 200, 209 (2004).

The Supreme Court has held that ERISA's civil enforcement scheme completely preempts state law causes of

---

[1] Competent proof of federal jurisdiction in an ERISA case includes "the various plan documents." *Aetna Health Inc. v. Davila*, 542 U.S. 200, 211 (2004). Therefore, the Court may consider the text of the Plan's "Employee Benefits Guides," attached as exhibits by defendants, which "contain[] the legal plan documents and the summary plan descriptions (SPDs)" for Jane Doe's plan. (Knoblach Decl. Exs. F-1 at 1, F-2 at 2.) Whether SPDs—which convey the contents of the Plan "in a manner calculated to be understood by the average plan participant," 29 U.S.C. § 1022(a)—are themselves legally enforceable plan documents has been the subject of some debate, and the Supreme Court recently held that they are not automatically enforceable. *See CIGNA Corp., et al. v. Amara*, -- U.S. --, 131 S.Ct. 1866, 1877-78 (2011). Even after *Amara*, however, SPDs may still be incorporated into a plan explicitly. *See Eugene S. v. Horizon Blue Cross Blue Shield of N.J.*, 663 F.3d 1124, 1131 (10th Cir. 2011) ("[A]n insurer is not entitled to deferential review merely because it claims the SPD is integrated into the Plan. Rather, the insurer must demonstrate that the SPD is part of the Plan, for example, by the SPD clearly stating on its face that it is part of the Plan."). Here, neither party disputes that the "Employee Benefits Guides," which state that they contain both "plan documents" and SPDs, are enforceable.

action within its scope, because Congress's purpose in enacting ERISA was "to provide a uniform regulatory regime over employee benefit plans," which would "ensure that employee benefit plan regulation would be exclusively a federal concern." *Davila*, 542 U.S. at 208 (internal quotation marks and citations omitted); *see also N.Y. State Conf. of Blue Cross & Blue Shield Plans v. Travelers Ins. Co.*, 514 U.S. 645, 656-57 (1995) ("Congress intended 'to ensure that plans and plan sponsors would be subject to a uniform body of benefits law; the goal was to minimize the administrative and financial burden of complying with conflicting directives among States or between States and the Federal Government . . . , [and to prevent] the potential for conflict in substantive law . . . requiring the tailoring of plans and employer conduct to the peculiarities of the law of each jurisdiction.'" (alterations in original) (quoting *Ingersoll-Rand Co. v. McClendon*, 498 U.S. 133, 142 (1990))).

To provide such uniformity, the statute contains broad preemption provisions, which safeguard the exclusive federal domain of employee benefit plan regulation. *See Davila*, 542 U.S. at 208; *see also Alessi v. Raybestos-Manhattan, Inc.*, 451 U.S. 504, 523 (1981). One such source of preemption under ERISA is § 502(a)(1)(B), which serves as ERISA's main enforcement tool in ensuring a uniform federal scheme:

> A civil action may be brought—(1) by a participant or beneficiary—. . . (B) to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan.

29 U.S.C. § 1132(a)(1)(B).

The Supreme Court has explained that "the detailed provisions of § 502(a) set forth a comprehensive civil enforcement scheme that represents a careful balancing of the need for prompt and fair claims settlement procedures against the public interest in encouraging the formation of employee benefit plans." *Pilot Life Ins. Co. v. Dedeaux*, 481 U.S. 41, 54 (1987). "[T]he inclusion of certain remedies and the exclusion of others under [§ 502's] federal scheme . . . 'provide[s] strong evidence that Congress did *not* intend to authorize other remedies that it simply forgot to incorporate expressly.'" *Id.* (quoting *Mass. Mut. Life Ins. Co. v. Russell*, 473 U.S. 134, 146 (1985)). Likewise, the Supreme Court has acknowledged that "the federal scheme would be completely undermined if ERISA-plan participants and beneficiaries were free to obtain remedies under state law that Congress rejected in ERISA." *Id.*

For this reason, where a plaintiff brings a state law claim that is "within the scope" of ERISA § 502(a)(1)(B), ERISA's complete preemption power will take effect, and state law claims may be properly removed. *See Davila*, 542 U.S. at 209. The effect of this preemptive power cannot be understated: it "prevents plaintiffs from 'avoid[ing] removal' to federal court 'by declining to plead necessary federal questions.'" *Arditi v. Lighthouse Int'l*, 676 F.3d 294, 298-99 (2d Cir. 2012) (quoting *Romano v. Kazacos*, 609 F.3d 512, 519 (2d Cir. 2010)) (alteration in original).

The test for assessing whether a claim is "within the scope of" ERISA § 502(a)(1)(B), and therefore completely preempted, consists of two parts:

> claims are completely preempted by ERISA if they are (i) brought by "an individual [who] at some point

in time, could have brought his claim under ERISA § 502(a)(1)(B)," and (ii) under circumstances in which "there is no other independent legal duty that is implicated by a defendant's actions."

*Montefiore Med. Ctr. v. Teamsters Local 272*, 642 F.3d 321, 328 (2d Cir. 2011) (quoting *Davila*, 542 U.S. at 210); *see also Davila*, 542 U.S. at 210 ("[I]f an individual . . . could have brought his claim under ERISA § 502(a)(1)(B), and where there is no other independent legal duty that is implicated by defendant's actions, then the individual's cause of action is completely pre-empted by ERISA § 502(a)(1)(B)."); *Metro. Life*, 481 U.S. at 65-66 (noting that section 502(a)(1)(B) of ERISA contains "extraordinary pre-emptive power" that "converts an ordinary state common law complaint into one stating a federal claim," making "causes of action within the scope of . . . § 502(a) . . . removable to federal court").

Additionally, "[t]o avoid potential confusion under the first prong of *Davila*, [the Second Circuit] has further clarified that the plaintiff must show that: (a) he is the type of party who can bring a claim pursuant to § 502(a)(1)(B) of ERISA; and (b) the actual claim asserted can be construed as a colorable claim for benefits pursuant to § 502(a)(1)(B)." *Arditi*, 676 F.3d at 299. Where both of *Davila*'s factors are satisfied—including the two sub-parts to *Davila*'s first prong—ERISA will preempt the state law claim. *Id.* (citing cases).

### 1. *Davila* Prong One

The Court first addresses whether plaintiff is "the *type* of party that can bring a claim" under § 502(a)(1)(B); it then considers "whether the *actual claim*" at issue constitutes a "colorable claim" for benefits under § 502(a)(1)(B). *Montefiore*, 642 F.3d at 328 (emphasis in original); *see also Josephson v. United Healthcare Corp.*, No. 11–CV–3665 (JS)(ETB), 2012 WL 4511365, at *3 (E.D.N.Y. Sept. 28, 2012) (acknowledging the Second Circuit's interpretation of *Davila*'s two-pronged test as consisting of two inquiries under the first prong).

### a. Type of Party

As previously set forth, § 502(a)(1)(B) clearly provides that a civil action may be brought (1) "by a participant or beneficiary" of (2) an ERISA employee benefit plan. 29 U.S.C. § 1132(a)(1)(B). It is not disputed that the Plan is an employee welfare benefit plan under ERISA. *See* 29 U.S.C. § 1002(1).[2] Although plaintiff is not a direct participant in or beneficiary of the plan, "[a] healthcare provider may stand in place of the beneficiary to pursue an ERISA claim if the beneficiary has assigned his or her rights to the provider in exchange for medical care." *Neuroaxis Neurosurgical Assocs., PC v. Cigna Healthcare of N.Y., Inc.*, No. 11 Civ. 8517, 2012 WL 4840807, at *3 (S.D.N.Y. Sept. 24, 2012). Plaintiff has alleged that each of the patients in question assigned their benefits to plaintiff (Compl. ¶¶ 26, 41-44), and accordingly, plaintiff is the type of party who could bring an ERISA claim.

---

[2] Section 3(1) of ERISA defines an employee welfare benefit plan as "any plan, fund, or program which was heretofore or is hereafter established or maintained by an employer or by an employee organization, or by both, to the extent that such plan, fund, or program was established or is maintained for the purpose of providing for its participants or their beneficiaries . . . benefits." 29 U.S.C. § 1002(1).

### b. Colorable claim

The parties' primary dispute is whether plaintiff's state claims are "colorable" under ERISA, *i.e.*, claims "to recover benefits due" under the terms of the Plan. 29 U.S.C. § 1132(a)(1)(B). Both parties acknowledge the distinction between claims concerning a "right to payment" and claims involving an "amount of payment"—in fact, plaintiff suggests that "[t]he outcomes of both United's motion to dismiss and [plaintiff's] cross-motion to remand turn almost entirely on whether [plaintiff's] claims involve the *right to payment* or *the amount of payment due.*" (Pl. Mem. at 9.) While right-to-payment claims "implicate coverage and benefits established by the terms of the ERISA benefit plan," which may be brought under § 502(a)(1)(B), amount-of-payment claims are "typically construed as independent contractual obligations between the provider and . . . the benefit plan." *Montefiore*, 642 F.3d at 331. Plaintiff argues that its claims relate to the amount of payment because, even though United withheld the payments, it acknowledged plaintiff's right to payment for services to Patients A-D. In response, United argues that plaintiff's right to payment for services to Jane Doe, rather than its right to payment for Patients A-D, forms the basis of this lawsuit, making all claims colorable under ERISA.

The Court agrees with United. Courts in this circuit have distinguished between right-to-payment and amount-of-payment cases by examining the degree to which "the actual claims asserted seek enforcement of specific provisions of the Plan, 'implicate coverage and benefits established by the terms of the ERISA benefit plan,' and 'can be construed as . . . colorable claim[s] for benefits pursuant to § 502(a)(1)(B).'"

*Arditi*, 676 F.3d at 299 (quoting *Montefiore*, 642 F.3d at 328). As one court explained,

> "Right to payment" claims involve challenges to benefits determinations, depend on the interpretation of plan language, and often become an issue when benefits have been denied. . . . "Amount of payment" claims involve the calculation and execution of reimbursement payments, depend on the extrinsic sources used for the calculation, and are commonly tied to the rate schedules and provider agreements included in provider agreements.

*Neuroaxis*, 2012 WL 4840807, at *4.

Even viewing the complaint in a light most favorable to plaintiff, it is clear that this case concerns the right to payment because the complaint alleges that United withheld payment for Patients A-D based solely on a dispute over Jane Doe's entitlement to benefits (Compl. ¶¶ 6, 39-45), which could only be resolved by interpreting the terms of the Plan. For example, the complaint refers directly to a Plan term in alleging that plaintiff was entitled to payment for the services to Jane Doe because they were "medically necessary"—a standard imposed by the Plan. (Compl. ¶ 3; Ex. F-2 to Knoblach Decl. at 59-60); *cf. Neuroaxis*, 2012 WL 4840807, at *4 ("To resolve this claim of underpayment, the Court must look to the plan to determine (a) what is 'medical necessity'. . . . This is a classic 'right to payment'—not 'amount of payment—determination."). Plaintiff argues that United already determined the medical necessity of its services to Jane Doe by pre-approving them (Compl. ¶ 2), but any pre-approval further demonstrates how plaintiff's claims "implicate coverage and benefits," *Montefiore*, 642 F.3d at 331,

because the pre-approval process is itself required by the Plan. (Ex. F-1 to Knoblach Decl. at 55-56.)

Finally, plaintiff's claims necessarily "depend on the interpretation of plan language," *Neuroaxis*, 2012 WL 4840807, at *4, because the Plan states that "[United] is entitled to deduct the amount of any overpayments from any future claims payable to you or your service providers." (Ex. F-1 to Knoblach Decl. at 184.) The Court would have to interpret this language in order to determine whether United was authorized to withhold payment for Patients A-D based on the dispute over Jane Doe, which confirms that these claims involve the right to payment and are therefore colorable ERISA claims under *Davila*'s first step. *Cf. Olchovy v. Michelin N. Am., Inc.*, No. 11-CV-1733(ADS)(ETB), 2011 WL 4916891, at *4 (E.D.N.Y. Sept. 30, 2011) (Report and Recommendation) (stating *Montefiore* "teaches that a dispute is a colorable claim for benefits under ERISA when its resolution depends on an interpretation of the terms of an ERISA-governed employee benefit plan; that is, when, in order to determine whether the plaintiff is entitled to relief, the court must look to the terms of the employee benefit plan, itself").

Plaintiff's argument that its claims relate only to the amount of payment attempts to narrow the focus of these motions to the services provided to Patients A-D, which no one disputes qualified for Plan benefits. That argument is unavailing, however, in light of the complaint's allegations concerning the dispute over Jane Doe's benefits. In other words, even if it is literally true that the "amount" due for the Patient A-D services is in question, United's position is that the complaint and the Plan documents establish that any amount due for Patients A-D is dependent on the right to payment for the Jane Doe services.

Therefore, there is no question that the Court will need to interpret the language of the Plan to resolve this dispute. *Cf. Enigma Mgmt. Corp. v. Multiplan, Inc.*, -- F. Supp. 2d --, No. 13-CV-5524 (ARR)(JO), 2014 WL 297269, at *7 (E.D.N.Y. Jan. 27, 2014) ("Enigma argues that this case only implicates the 'amount of payment,' . . . . [because] United did not deny payment on the disputed claims altogether, but instead paid the claims in part, thereby acknowledging that the medical services were covered under the participants' benefit plans and that Enigma had a right to payment. . . . Yet Enigma's argument mischaracterizes the dispute. In a literal sense the parties disagree on the *amount* that United is required to pay on Enigma's claims, but they only disagree because United asserts that Enigma does not have the *right* to full payment under the terms of the ERISA plan. The court will need to interpret the plan to determine what payments the participants were required to make, whether United could properly reduce Enigma's payments if it did not collect those payments, and whether United could require specific documentation as proof that Enigma had collected those payments.").

Furthermore, plaintiff's argument that this is an amount-of-payment case fails because plaintiff has not identified how its claims "implicate duties separate from the ERISA plan." *Enigma*, 2014 WL 297269, at *5. "[P]rior cases . . . show that the 'amount of payment' category is intended to have a narrow definition." *Id.* at *8. In order to fit within that narrow category, plaintiff would have to plausibly allege that the dispute over the amount of payment stems from an independent contractual obligation—such as the manner of calculating, or the timeliness of paying, the reimbursement amount— which is often found outside of the ERISA plan. *See Montefiore*, 642 F.3d 325 & n.2;

*cf. Marin Gen. Hosp. v. Modesto & Empire Traction Co.*, 581 F.3d 941, 943-44 (9th Cir. 2009) (holding that action against an ERISA plan administrator based on his alleged oral promise to pay for the majority of beneficiary's medical expenses was not a "colorable claim" under § 502(a)(1)(B) because dispute concerned the terms of the alleged oral promise, not of the ERISA plan itself); *Olchovy*, 2011 WL 4916891, at *5 (where plaintiffs alleged they were entitled to family medical coverage pursuant to a settlement agreement with defendants' predecessor, this did not constitute a "colorable claim" under ERISA because, "notwithstanding what the Plan states, they are entitled to . . . coverage . . . pursuant to a separate court-ordered settlement"); *cf. Zummo v. Zummo*, No. 11 CV 6256 (DRH)(WDW), 2012 WL 3113813, at *4 (E.D.N.Y. July 31, 2012) (because plaintiff's breach-of-contract claim required an examination of an employee benefit plan's language and essentially sought enforcement of a right to payment under the terms of that plan, plaintiff's "claim [fell] squarely within the enforcement provision of ERISA").

As in *Montefiore*, the dispute in this case—even accepting plaintiff's characterization of it as a dispute over the payments for Patients A-D—does not concern "obligations derived from a source other than the Plan." 642 F.3d at 331. The source of the obligation alleged by plaintiff is still the Plan, because plaintiff alleges that United withheld payment due to a dispute over the medical necessity of the Jane Doe services, and because the Plan itself reveals that United has the authority to withhold payment in certain situations. Thus, unlike the cases upon which plaintiff relies,

plaintiff's allegations implicate Plan terms, not an independent obligation.[3]

Therefore, the Court concludes that plaintiff's claims do not relate solely to the amount of payment, but instead to the right to payment under the Plan—specifically, plaintiff's right to payment for the services it provided to Jane Doe. United, as the removing party, has met both facets of the first prong of the *Davila* test.

### 2. *Davila* Prong Two

Under the second prong of *Davila*, "the only question remaining is whether some other, completely independent duty forms *another* basis for legal action." *Montefiore*,

---

[3] The three cases on which plaintiff relies each clearly involved an independent legal obligation outside of the ERISA plan, which plaintiff has not alleged here. *See Somerset Orthopedic Assocs., P.A. v. Aetna Life Ins. Co.*, No. 06-867 (MLC), 2007 WL 432986, at *1-2 (D.N.J. Feb. 2, 2007) (concluding that claims involved amount of payment where defendant insurance company acknowledged that the case was about its failure to "pay correctly," not a failure to pay in accordance with the terms of the ERISA plan, and defendant did not even seek to attach the text of the plan as an exhibit); *Horizon Blue Cross Blue Shield of N.J. v. East Brunswick Surgery Center*, 623 F. Supp. 2d 568, 577 (D.N.J. 2009) ("Here, what is critical to Plaintiff's claims is not what benefits the plan participants were entitled to under their ERISA plans but the relationship between Plaintiff and its out-of-network and in-network providers."); *UPMC Presby Shadyside v. Whirley Indus., Inc.*, 1:05-CV-68, 2005 WL 2335337, at *6 (W.D. Pa. Sept. 23, 2005) ("[T]he 'crux' of the 'prompt payment discount' dispute is whether Defendants breached provisions of the MOU; there is no contention that Defendants' rights and obligations relative to the prompt payment discount derive from the ERISA plan."); *id.* at *7 ("*[A]s framed by the complaint,* the dispute is not whether, in fact, UPMC's charges were 'reasonable and customary' within the meaning of the Plan, but whether Defendants had the right under the MOU to make deductions from UPMC's charges.") (emphasis in original).

642 F.3d at 332. Plaintiff has not attempted to identify another independent legal duty, and the Court has not detected one based upon the allegations in the complaint. In fact, the complaint alleges that "[plaintiff is] . . . an 'out-of-network provider,' meaning [plaintiff] has no contractual relationship with United." (Compl. ¶ 21.)

Therefore, United has satisfied both steps under *Davila* and carried its burden to justify removal. Plaintiff's state claims are completely preempted because they are "within the scope of" ERISA § 502(a)(1)(B). Accordingly, plaintiff's motion to remand is denied.[4]

### III. DEFENDANTS' MOTION TO DISMISS

#### A. Legal Standard

Motions to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure probe the legal, not the factual, sufficiency of a complaint. *See, e.g.*, *Sims v. Artuz*, 230 F.3d 14, 20 (2d Cir. 2000). Stated differently, when assessing the viability of a complaint's pleadings at the Rule 12(b)(6) stage, "the issue is not whether a plaintiff is likely to prevail ultimately, but whether the claimant is entitled to offer evidence to support the claims." *Chance v. Armstrong*, 143 F.3d 698, 701 (2d Cir. 1998) (internal alternation omitted). Thus, when reviewing a motion to dismiss, "the [c]ourt must accept the factual allegations set forth in the complaint as true and draw all reasonable inferences in favor of the plaintiff." *Volpe v. Nassau County*, 12-CV-2416 (JFB)(AKT), 2013 WL 28561, at *5 (E.D.N.Y. Jan. 3, 2013); *see also Erickson v. Pardus*, 551 U.S. 89, 93-94 (2007) (per curiam). However, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

To survive a motion to dismiss, a complaint must set forth "a plausible set of facts sufficient 'to raise a right to relief above the speculative level.'" *Operating Local 649 Annuity Trust Fund v. Smith Barney Fund Mgmt. LLC*, 595 F.3d 86, 91 (2d Cir. 2010) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). Generally, this standard for survival does not require "heightened fact pleading of specifics, but only enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570.

Where a motion to dismiss presents itself before the court, a court may examine the following: "(1) facts alleged in the complaint and documents attached to it or incorporated in it by reference, (2) documents 'integral' to the complaint and relied upon in it, even if not attached or incorporated by reference, [and] (3) documents or information contained in defendant's motion papers if plaintiff has knowledge or possession of the material and relied on it in framing the complaint." *Nasso v. Bio Reference Labs., Inc.*, 892 F. Supp. 2d 439, 446 (E.D.N.Y. 2012) (quoting *In re Merrill Lynch & Co.*, 273 F. Supp. 2d 351, 356-57 (S.D.N.Y. 2003)) (internal citations omitted).[5]

---

[4] Defendants suggested, without directly arguing, that these claims are also *expressly* preempted by ERISA, *see Pilot Life v. Dedeaux*, 481 U.S. 41 (1987), but the Court need not decide this issue for two reasons. First, *complete* preemption, rather than express preemption, decides the propriety of removal. *See Taylor*, 481 U.S. at 63-64. Second, having determined that removal was proper, the Court concludes *infra* that plaintiff's claims may not go forward as ERISA claims because plaintiff has sued the wrong party. Therefore, the Court need not determine whether the defense of express preemption would apply in this case.

[5] The parties do not dispute that the Plan documents submitted by United are integral to plaintiff's complaint, and the Court has considered them on the

## B.  Application

Empire's motion to dismiss is granted because, even if plaintiff's preempted state claims were restyled as ERISA claims, they could not proceed under § 502(a)(1)(B) because plaintiff has sued the wrong party. Furthermore, §§ 502(a)(3) and 503 do not provide additional avenues of relief.

### 1.  Section 502(a)(1)(B)

Plaintiff's claims would fail even if brought under § 502(a)(1)(B) because the complaint does not allege that United is a proper defendant.  The Second Circuit has held that a claim for benefits pursuant to § 502(a)(1)(B) may only be asserted against the plan itself, the plan administrator, and the plan trustees. *See Crocco v. Xerox Corp.*, 137 F.3d 105, 107 (2d Cir. 1998) ("[O]nly the plan and the administrators and trustees of the plan in their capacity as such may be held liable." (quoting *Leonelli v. Pennwalt Corp.*, 887 F.2d 1195, 1199 (2d Cir. 1989)) (internal quotation marks omitted)); *see also Chapman v. Choicecare Long Island Disability Plan*, 288 F.3d 506, 509-10 (2d Cir. 2002); *Chapro v. SSR Realty Advisors, Inc. Severance Plan*, 351 F. Supp. 2d 152, 155 (S.D.N.Y. 2004).

United is not the plan itself, and plaintiff has not alleged that it is either the plan administrator or a trustee.  In fact, American Airlines is the named plan administrator (Ex. F-1 to Knoblach Decl. at 180), and "if a plan specifically designates a plan administrator, then that individual or entity is *the* plan administrator for purposes of ERISA." *Crocco*, 137 F.3d at 107 (quoting *McKinsey v. Sentry Insurance*, 986 F.2d 401, 404 (10th Cir. 1993) (emphasis in

original)).  Nonetheless, plaintiff's argument appears to assume that United is the plan administrator, even though the complaint alleges at most that United provided health insurance for plaintiff's patients. (Compl. ¶ 18.)  The Second Circuit has at least twice rejected arguments similar to plaintiff's here that health insurers were "unnamed plan administrator[s]," and this Court must follow those holdings.[6]  *Id.* at 107 (citing *Lee v. Burkhart*, 991 F.2d 1004, 1010 (2d Cir. 1993)).

Plaintiff points to a statement in United's memorandum of law that United "administers the claims under these plans." (Def. Mem. at 1), but "claims do not lie against any and every 'administrator' associated with a Plan," such as a claims administrator. *New York State Psychiatric Ass'n, Inc. v. UnitedHealth Grp.*, 980 F. Supp. 2d 527, 539 (S.D.N.Y. 2013). ERISA defines the "administrator" who may be subjected to liability as "the person specifically so designated by the terms of the instrument under which the plan is operated," 29 U.S.C. § 1002(16)(A), which is American Airlines, not United.  The fact

---

[6] Some courts within this circuit have applied a more flexible definition of "plan administrator" under other circumstances, but "the larger number of judges on . . . Second Circuit courts adhere to a bright-line rule that only entities that have been formally designated as 'plan administrators' under 29 U.S.C. § 1002(16)(A) are proper 'administrator' defendants in § 502(a)(1)(B) actions." *New York State Psychiatric Ass'n*, 980 F. Supp. 2d at 538; *accord Lee*, 991 F.2d 1004, 1010 n.5 ("Some courts have held that under certain circumstances a party not designated as an administrator may be liable . . . . We disagree. Respect for our proper role requires that we decline . . . to substitute our notions of fairness for the duties which Congress has specifically articulated by imposing liability on the 'administrator'.") (internal quotation marks and citations omitted).

---

motion to dismiss. *See DeSilva v. North Shore-Long Island Jewish Health Sys. Inc.*, 770 F. Supp. 2d 497, 545 n.22 (E.D.N.Y. 2011).

that United "apparently exercised some discretion and authority in making benefits determinations . . . is not enough to meet the statutory definition of an ERISA Plan 'administrator.'" *Schnur v. CTC Commc'ns Corp. Grp. Disability Plan*, 621 F. Supp. 2d 96, 107 (S.D.N.Y. 2008).

In short, plaintiff's claims may not proceed under § 502(a)(1)(B) for the same reason cited by the Second Circuit in *Crocco*: "it is clear from the Plan documents that [United] was neither the designated Plan administrator nor a Plan trustee, and because it could not, under the rationale underlying *Lee*, be a *de facto* co-administrator . . . . [United] is, therefore, entitled to dismissal of the claims against it." *Id.* at 107-08.

2. Section 502(a)(3)

Plaintiff argues, in the alternative, that it is entitled to relief under ERISA § 502(a)(3), an equitable provision which allows "a participant, beneficiary, or fiduciary" to bring an action "to enjoin any act or practice which violates any provision of this subchapter or the terms of the plan, or . . . to obtain other appropriate equitable relief." 29 U.S.C. § 1132(a)(3).

Here, despite plaintiff's request for declaratory and injunctive relief in the complaint, the claims are plainly legal claims for money damages, because "they seek no more than compensation for loss resulting from the defendant's breach of legal duty." *Frommert v. Conkright*, 433 F.3d 254, 270 (2d Cir. 2006) (quoting *Bowen v. Massachusetts*, 487 U.S. 879, 918-19 (1988) (Scalia, J., dissenting)). Under similar circumstances, the Second Circuit in *Frommert* affirmed the dismissal of an attempt to "expand the nature of [plaintiffs'] claim by couching it in equitable terms to allow relief under § 502(a)(3)," because "the gravamen of this action remains a claim for monetary compensation and that, above all else, dictates the relief available." *Id.* The relief available is provided by § 502(a)(1)(B), and because that relief is adequate for plaintiff's claims, which fall "comfortably" within its scope, there is no "appropriate" equitable relief under § 502(a)(3). *See Varity Corp.*, 516 U.S. at 515 ("[W]e should expect that where Congress elsewhere provided adequate relief for a beneficiary's injury, there will likely be no need for further equitable relief, in which case such relief normally would not be 'appropriate.'"); *see also Johnson v. Buckley,* 356 F.3d 1067, 1077 (9th Cir. 2004) ("[W]hen relief is available under section 1132(a)(1), courts will not allow relief under § 1132(a)(3)'s 'catch-all provision.'").

To be clear, the Court concludes that § 502(a)(1)(B) provides adequate relief to plaintiff even though plaintiff may not sue United under that section. *See New York State Psychiatric Ass'n*, 980 F. Supp. 2d at 541 ("The rule, then, is that claims for equitable relief under § 502(a)(3) must be dismissed if the plaintiff has adequate remedies under § 502(a)(1)(B)—even if those remedies lie against defendants other than the named defendant."); *Staten Island Chiropractic Associates, PLLC v. Aetna, Inc.*, 09-CV-2276 CBA VP, 2012 WL 832252, at *11 (E.D.N.Y. Mar. 12, 2012) ("The fact that the plaintiffs have currently brought their § 1132(a)(1)(B) claims against the wrong defendant does not alter the fact that relief was available to them under that section."). In other words, plaintiff cannot avoid the consequence of suing an improper party by seeking refuge in § 502(a)(3). Even if it is a "catchall" provision, § 502(a)(3) catches *injuries*—rather than additional parties—not otherwise remedied in § 502. *Frommert*, 433 F.3d at 270. Because plaintiff's alleged *injury* is remediable under § 502(a)(1)(B) if brought

against the Plan, the plan administrator, or the trustees, this is not a situation where plaintiff "must rely on the third subsection or . . . have no remedy at all." *Varity Corp.*, 516 U.S. at 515 (emphasis removed). Where, as here, there is an adequate remedy, the Supreme Court "has consistently disfavored the expansion of the availability of equitable relief," *Frommert*, 433 F.3d at 270, and courts in this circuit have followed suit. *See Kendall v. Emps. Retirement Plan of Avon Prods.*, 561 F.3d 112, 119-20 (2d Cir. 2009) (affirming dismissal of § 502(a)(3) claims, finding them to be legal in nature, where "Kendall's claims for payment of benefits . . . is effectively a request for a disgorgement of funds Kendall believes Avon gained by not paying out benefits under a plan that conforms with ERISA"); *New York State Psychiatric Ass'n*, 980 F. Supp. 2d at 541 (granting motion to dismiss § 502(a)(3) claim because "[a]s was true in *Staten Island, Frommert,* and *Nechis,* the crux of plaintiffs' claim is for monetary relief—the benefits they were denied. Such a claim lies only against the self-insured Plans, any Plan trustees, and their respective 29 U.S.C. § 1002(16)(A) Plan Administrators"); *Biomed Pharm., Inc. v. Oxford Health Plans (N.Y.), Inc.*, 775 F. Supp. 2d 730, 737 (S.D.N.Y. 2011) (granting motion to dismiss where "the Court finds that Biomed's three ERISA § 502(a)(3) claims are in fact entirely duplicative of its claim for benefits under ERISA § 502(a)(1)(B), as the gravamen of all three Counts is that Oxford improperly denied the Patient benefits to which he was entitled under the Plan").[7]

### 3. Section 503

Plaintiff's argument that the complaint should be construed to allege a claim under ERISA § 503 likewise fails, because that section—which requires adequate notice of the reason for a benefits denial—"imposes obligations only upon the 'employee benefit plan[s]' themselves." *New York State Psychiatric Ass'n*, 980 F. Supp. 2d at 548 (quoting 29 U.S.C. § 1133). "[P]laintiff here has not alleged that any of the United Defendants are 'plans' (nor can [plaintiff] plausibly allege that they are plan administrators)," and accordingly, any possible § 503 claim is dismissed. *Gates v. United Health Grp. Inc.*, No. 11 Civ. 3487 (KBF), 2012 WL 2953050, at *10 (S.D.N.Y. July 16, 2012).

### C. Leave to Amend

At oral argument and by letter dated August 5, 2014, plaintiff sought leave to amend its complaint to add the proper defendants under ERISA. Whether plaintiff's motion is considered one to amend under Federal Rule of Civil Procedure 15, or one to join parties under Rule 21, "courts adhere to the same standard of liberality," *Sly Magazine, LLC v. Weider Publications L.L.C.*, 241 F.R.D. 527, 532 (S.D.N.Y. 2007) (internal quotation marks

---

[7] In *Biomed*, the court noted that "Second Circuit cases have made clear that *Varity* did not eliminate the possibility of a plaintiff successfully asserting a claim under both ERISA § 502(a)(1)(B) and ERISA § 502(a)(3), but rather indicated that equitable relief under § 502(a)(3) would not 'normally' be appropriate." *Biomed*, 775 F. Supp. 2d at 737. Here,

as in *Biomed*, equitable relief would not be appropriate because plaintiff's claims for both legal and equitable relief rely on the same allegations. *Id.* at n.6. Where the Second Circuit has allowed both claims to proceed, the § 502(a)(3) claim relied on distinct allegations that the defendant had fiduciary obligations to the plaintiff and breached them. *See Frommert*, 433 F.3d at 271. Here, however, even if the Court assumed that United was a fiduciary, plaintiff has not alleged any distinct breach or injury; this remains a denial-of-benefits case for which adequate relief is available under § 502(a)(1)(B). Therefore, equitable relief is not "appropriate." *N.Y. State Psych. Ass'n*, 980 F. Supp. 2d at 540.

and citation omitted), which directs that leave to amend should be "freely given," *Aetna Cas. & Sur. Co. v. Aniero Concrete Co., Inc.*, 404 F.3d 566, 603 (2d Cir. 2005). There is no basis to deny plaintiff leave to amend to add the proper party. Accordingly, the Court grants plaintiff leave to amend the complaint to add the plan, the plan administrators, and/or the trustees. The case caption will no longer include United, however, as the claims against it have been dismissed.

## IV. CONCLUSION

Because plaintiff's claims against United under New York law are completely preempted by ERISA, plaintiff's motion to remand this action is denied. United's motion to dismiss is granted because no claim lies against United, which is not named as the plan administrator. Furthermore, ERISA § 502(a)(1)(B) would provide adequate relief to plaintiff if it sued the proper party, and therefore ERISA sections 502(a)(3) and 503 do not provide alternative avenues of relief against United. Plaintiff's motion to amend the complaint to add the proper party is granted, but the Clerk of the Court shall remove United from the caption of the amended complaint. Plaintiff shall file the amended complaint within 30 days of the date of this order.

SO ORDERED.

_____
JOSEPH F. BIANCO
United States District Judge

Dated: December 11, 2014
Central Islip, NY

* * *

Plaintiff is represented by Matthew Didora, Ruskin Moscou Faltischeck, East Tower 15th Floor, 1425 Rexcorp Plaza, Uniondale, NY 11556. Defendants are represented by John Thomas Seybert and Ryan C. Chapoteau, Sedgwick LLP, 225 Liberty Street, 28th Floor, New York, NY 10281.